[Cite as *In re H.J.H.*, 2018-Ohio-1708.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF H.J.H. | : | Case No. 18CA3 |
| ALLEGED DEPENDENT CHILD | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| | | **RELEASED: 04/27/2018** |

<u>APPEARANCES</u>:

Lynn A. Turner, Hillsboro, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecuting Attorney, and Molly Bolek, Highland County Assistant Prosecuting Attorney, Hillsboro, Ohio, for appellee.

Harsha, J.

**{¶1}**    After the Highland County Juvenile Court granted permanent custody of H.J.H. to the county Children's Services Division ("agency"), the mother appealed.  But the first assignment of error fails to attribute error to the trial court. Instead she asserts the agency failed to treat the case objectively and acted prejudicially against her and the father, expecting them to fail, and failing to credit them with completion of the case plan. We construe her first assignment of error to be that the trial court erred when it found the agency made reasonable efforts towards reunification.

**{¶2}**    The record reflects that the trial court made reasonable-efforts findings at several stages of the proceedings. Therefore, the agency established that reasonable efforts had been made prior to the hearing on the motion for permanent custody. Where the court has made earlier findings that the agency made reasonable reunification efforts, it need not do so at a hearing on a motion for permanent custody.  Nonetheless

the trial court made such a finding, and the record supports it.  We overrule the mother's first assignment of error.

{¶3}    The mother also contends that the trial court's finding that it was in H.J.H.'s best interest to award permanent custody to the agency was not supported by clear and convincing evidence. She contends that she and the father substantially completed their case plan, demonstrated substantial remediation of the problems that created the initial removal, and presented clear and convincing evidence that it was in the best interest to reunite H.J.H. with them.  However, the court considered all relevant factors, including the progress on the case plan, and determined that substantial compliance with the case plan does not override consideration of the child's best interest. The primary issue precluding reunification was the parents' continued failure to provide appropriate, adequate, safe and sanitary housing – a basic requirement of the case plan. The trial court's decision was not against the manifest weight of the evidence. We overrule mother's second assignment of error and affirm the trial court's judgment.

I. FACTS

{¶4}    The agency sought temporary custody of H.J.H. immediately at birth in October 2015. At that time H.J.H.'s three siblings had been adjudicated dependent and were in the agency's temporary custody. H.J.H.'s parents subsequently admitted H.J.H. was dependent and agreed to the agency's temporary custody for a one-year period. In September 2016 at the annual review hearing, the parents agreed that the agency had made reasonable efforts to finalize the permanency plan and to eliminate the need for

continued removal of H.J.H. from their home. The parents subsequently agreed to extend temporary custody of H.J.H. to the agency for another one-year period.

{¶5}    In September 2017, the agency filed a motion for permanent custody pursuant to R.C. 2151.413 and R.C. 2151.414. A week later the mother filed a motion to revest custody with her.

{¶6}    At the December 2017 permanent custody hearing, agency caseworker Walter Curren testified that he had been the family's caseworker since April 2015, prior to H.J.H.'s birth, due to agency proceedings involving H.J.H.'s siblings. Curren testified that two of the siblings had been placed with their fathers and one was in a Planned Permanent Living Arrangement. The mother had all parental rights in a fourth child terminated and permanent custody granted to the agency in 2000. Curren testified that the mother had complied with much of her case plan, except the requirement that she procure stable, appropriate housing.

{¶7}    Curren testified that the mother moved a total of eight different times during the past two years and had refused Curren's request for access to the homes. Curren had great difficulty making unannounced home visits. Curren testified that the parents were currently residing in an old trailer that appeared adequate despite a musty odor, when he first inspected the trailer after they had moved in. However he testified that when he inspected the trailer in June or July 2017, it was cluttered, there was no working air conditioning, the mother refused to open any windows, and the heat was so overwhelming he had to exit the trailer. Curren had been unable to inspect the trailer until the week of the hearing because no one would answer the door when he would attempt an unscheduled visit. During the December inspection he found the trailer

"freezing" without heat; it had a number of electrical space heaters sitting around, dirty dishes stacked to the top in the sink, the floors completely cluttered with junk and bags full of clothes; the hallways had paths through the junk to access the back rooms; there was no place to sit down; and a large open bottle of pills was sitting on an end table. When Curren inspected the back bedrooms he found that they were also very cluttered. Because it had an operational space heater, the mother's bedroom was the only warm room in the trailer.

{¶8} Curren testified that he did not believe the home was fit for a two-year-old child because of the amount of clutter and trash everywhere, the lack of heat, and the fire hazard posed by the number of space heaters scattered throughout the cluttered floors. The musty smell in the trailer was so strong that he left the trailer with a throbbing head. On cross-examination Curren acknowledged that he did not see any pets inside the home and that "pets were a huge issue * * * from the initial on-site it was pet feces all over the home." Curren testified that when the mother moved into a new residence it would be suitable, but as time progressed the home would get progressively worse. He saw the situation in the trailer experience the same "downward slide."

{¶9} The mother testified that she had moved eight times over the past two years and admitted that these moves did not show stability in housing. However, the mother testified that she believed she provided suitable housing because the trailer had heat, running water, and "the basics" for children.

{¶10} During a recess in the hearing the guardian ad litem and Curren went to the trailer to inspect it. Curren testified that both parents accompanied him and upon entering the home the parents immediately began picking up trash, doing dishes, and

cleaning the home. Curren testified that the home was cold, and when the father attempted to start the furnace it produced only cold air. Curren testified that the home was cluttered, the carpet did not look like it had been vacuumed in many months, and there were dirty cotton swabs and shards of metal on the carpet, a lawnmower in the kitchen, and bare wires protruding from the living room wall. Curren testified that in June, the home looked neat, but by December, it was "a 180-degree difference." Curren observed five electrical heaters and a propane heater. Curren testified that the trailer was surrounded by tin metal debris and an old rotted-out shed.

{¶11}  Testimony of the guardian ad litem, Lee Koogler, confirmed Curren's description about the trailer. Koogler testified that he did not believe the trailer was safe or suitable for a two-year-old child.

{¶12}  The trial court entered judgment granting permanent custody of H.J.H. to the agency and terminating the mother and father's parental rights.  The trial court found by clear and convincing evidence that H.J.H. had been in the agency's temporary custody for 12 or more of a 22-month period; the mother's parental rights to H.J.H.'s sibling had been involuntarily terminated and she failed to provide clear and convincing evidence that, notwithstanding the prior termination, she could provide a legally secure placement and adequate care for the health, welfare and safety of the H.J.H.; that H.J.H. cannot be placed with the mother within a reasonable time and should not be placed with her; and that it was in H.J.H.'s best interest to grant the agency's motion for permanent custody. The court also made a finding that "the agency has made reasonable efforts" at unification through its case plans.

II. ASSIGNMENTS OF ERROR

**{¶13}** Mother assigns the following errors for our review:

1. THE AGENCY FAILED TO TREAT THIS CASE OBJECTIVELY,
APART FROM THE OTHER SIBLING CASES. IT ACTED
PREJUDICIALLY AGAINST THE PARENTS, EXPECTING THEM TO
FAIL, AND FAILED TO CREDIT THEM WITH COMPLETION OF THE
CASE PLAN.

2. THE TRIAL COURT ERRED IN FINDING IT TO BE IN THE CHILD'S
BEST INTEREST TO GRANT THE AGENCY PERMANENT CUSTODY
AND TERMINATE THE MOTHER'S PARENTAL RIGHTS. NOT ONLY
DID THE PARENTS SUBSTANTIALLY COMPLETE THEIR CASE PLAN,
BUT DEMONSTRATED SUBSTANTIAL REMEDIATION OF THE
PROBLEMS WHICH CREATED THE INITIAL SITUATION.

### III. LAW AND ANALYSIS

**{¶14}** The mother does not phrase her first assignment of error in terms of an error in the trial court's judgment. Nonetheless we construe it as a challenge to the trial court's finding that the agency made reasonable reunification efforts; i.e. the reasonable efforts finding is against the manifest weight of the evidence.

### A. Standard of Review

**{¶15}** A reviewing court will not reverse a trial court's judgment in a permanent custody case unless it is against the manifest weight of the evidence. *See In re T.J.*, 4th Dist. Highland Nos. 15CA15 and 15CA16, 2016-Ohio-163, ¶ 25. "To determine whether a permanent custody decision is against the manifest weight of the evidence, an appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving evidentiary conflicts, the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id.* at ¶ 25, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. In reviewing evidence under this standard, we defer to the trial court's determinations of matters of

credibility, which are crucial in these cases, where demeanor and attitude are not reflected well by the written record. *Eastley* at ¶ 21; *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

**{¶16}** In a permanent custody case the dispositive issue on appeal is "whether the trial court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43; R.C. 2151.414(B)(1). "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 14. "[I]f the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence." *In re R.M.*, 2013-Ohio-3588, 997 N.E.2d 169, ¶ 55 (4th Dist.).

**{¶17}** "The essential question we must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is whether the amount of competent, credible evidence presented at trial produced in the court's mind a firm belief or conviction that permanent custody was warranted." *In re T.J.* at ¶ 26.

### B. The Agency's Reasonable Reunification Efforts

{¶18} The mother contends that agency "exhibited prejudicial conduct towards the parents, assuming and expecting them to fail at their reunification attempts." The mother argues that the agency's bias is shown by the caseworker and guardian ad litem's concerns that the trailer the mother secured was unbearably hot and would not be maintained, and she would repeat the unstable housing cycle exhibited by her most recent seven moves. The mother concludes, "it would appear that the parents' had many obstacles and presuppositions thrown their way, despite their successful, concerted efforts to work the Case Plan, and their honest desire to reunify with their child, H.J.H." (Br. 5)  Thus she implies the caseworker testimony criticizing the mother's efforts was not worthy of belief.  But as already noted in ¶15, we leave credibility issues to the factfinder.

{¶19} R.C. 2151.419(A)(1) enumerates the types of hearings at which the court must determine whether the agency has made "reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." The agency has the burden of proving that it has made those reasonable efforts. This statute "makes no reference to a hearing on a motion for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414." *In re C.F.,* 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41 (noting that the types of hearings enumerated in the statute "involve adjudicatory, emergency, detention and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state"). Instead, at various stages of the child-custody

proceeding, the agency may be required to prove that it has made reasonable efforts at family reunification. "If the agency has not established that reasonable efforts have been made prior to the hearing on a motion for permanent custody, then it must demonstrate such efforts at that time." *Id.* at ¶ 43.

{¶20} Here, the permanent custody motion is governed by R.C 2151.413 and R.C. 2151.414. Therefore, the agency was not required to show reasonable reunification efforts at the hearing unless it had not been established previously. *Id.* At several stages of the proceedings the agency established that it made reasonable reunification efforts. In its entry granting the agency emergency temporary custody the court found that the agency made all reasonable efforts to prevent the removal of H.J.H. from the home. And, in its entry extending temporary custody to the agency, the mother stipulated and the court found that the agency made reasonable efforts to finalize the permanency plan for H.J.H. and to eliminate the need for continued removal of H.J.H. from the home by providing case management services to the family as outlined in the case plan. Because the record reflects that the trial court made reasonable-effort findings when H.J.H. was committed to the agency's emergency custody, and again when it extended the agency's temporary custody, the agency did not need to prove at the permanent custody hearing that it made reasonable reunification efforts. Nor did the trial court need to make such a determination. *Id.* at ¶ 42, 45.

{¶21} Although the trial court was not required to make an additional reasonable effort finding, it did so in its judgment. And we conclude the record, as reflected by our summary of evidence produced at the permanent custody hearing, supports it. We overrule the mother's first assignment of error.

## C. Best Interest of the Child

**{¶22}** Next the mother contends because the evidence shows that the parents substantially completed their case plan, the trial court erred in finding that it was in H.J.H.'s best interest to commit him to the agency's permanent custody.

### 1. Permanent Custody Principles

**{¶23}** "The United States Supreme Court has stated that parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by this Court.' " *In re B.C.,* 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶ 19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). "It is irrefutable that parents have fundamental constitutional rights free from government intervention in their decisions on the custody and caretaking of their children." *In re Mullen*, 129 Ohio St.3d 217, 2011-Ohio-3361, 953 N.E.2d 302, ¶ 26, citing *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, 781 N.E.2d 971, ¶ 16. "It is also irrefutable that those rights are not absolute." *Mullen* at ¶ 26; *In re D.A.*, 113 Ohio St.3d 88 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11. Instead, " 'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.' " *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting *In re R.J.C.*, 200 So.2d 54, 58 (Fla.App.1974). Thus, the state may terminate parental rights when the child's best interest requires it. *D.A.* at ¶ 11.

### 2. Permanent Custody Framework

**{¶24}** R.C. 2151.353(A)(4) permits a trial court to grant permanent custody of a child who is adjudicated an abused, neglected, or dependent to a children services

agency if the court determines: (1) that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent as provided in R.C. 2151.414(E) and (2) that the permanent commitment is in the best interest of the child as provided in R.C. 2151.414(D)(1)(a)-(e).  The mother contests the second prong: the best interest finding.

### 3. Trial Court's Best Interest Finding

**{¶25}**  The trial court considered the best interest factors in R.C. 2151.414(D)(1)(a)-(e), including the extent to which the parents had complied with the case plan, and found that it was in H.J.H.'s best interest to award the agency permanent custody. Despite the parents' case plan efforts, the court found that the parents failed a very significant aspect of the case plan, i.e. appropriate, safe and sanitary housing:

> A great deal of testimony was received by the Court as to the CASE PLAN compliance of both parents. Although the Court applauds the efforts of each parent in that regard it needs to be noted compliance with CASE PLAN requirements does not override what is in the interest of H.J.H. *  *  * Once the case reaches the disposition phase, the best interest of the child controls.
>         * * *
> The primary issue precluding the parents from reunification with H.J.H. is appropriate, safe, sanitary and adequate housing. (Entry, p. 4-5)

**{¶26}**  R.C. 2151.414(D)(1) requires the trial court "to consider 'all relevant factors,' including five enumerated statutory factors * * *. No one element is given greater weight or heightened significance." *In re C.F.*, 113 Ohio St.3d 73, 2007–Ohio–1104, 862 N.E.2d 816, ¶ 57, citing *In re Schaefer,* 111 Ohio St.3d 498, 2006–Ohio–5513, 857 N.E.2d 532, ¶ 6. The five enumerated factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect

the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.

**{¶27}** The mother contends that they substantially complied with the case plan and therefore H.J.H. should be returned to her. However, as the trial court correctly noted, "a parent's case plan compliance, while it may be relevant to a best interest analysis, does not automatically override a trial court's decision regarding what is in the child's best interest." *In the Matter of S.S.,* at ¶ 164; *In the Matter of A.D.M.*, 4th Dist. Highland No. 16CA25, 2017-Ohio-1432, *9 (citing numerous cases on point). The trial court acknowledged and applauded the parents' effort on the case plan, with one exception: the inability to provide safe, sanitary housing. The trial court found the parents' demeanor lacking credibility about the condition of their home and credited the testimony of both the caseworker and the guardian ad litem, who both found the home unfit for a two-year-old:

> IT is unfortunate that after more than two years neither parent is able to provide a safe, sanitary or adequate home for H.J.H. When considering the case plan accomplishments of both it is hard to understand why one of the most easily obtainable and important issues, a clean and safe home, has not apparently been a priority or achieved. There is no excuse of the condition of the home as described by Caseworker Curren or the Guardian Ad Litem. The fact that neither parent had concerns with H.J.H. residing in that environment speaks volumes as to the inability of both to safely and adequately parent H.J.H. (Entry, p. 6)

**{¶28}** Clear and convincing evidence supports the trial court's determination that awarding the agency permanent custody is in H.J.H.'s best interest. The trial court

examined the best interest factors and determined that H.J.H. was placed in the agency's temporary custody since he was three-days old and, although it appeared the visits with the parents went well, H.J.H. had also bonded with his foster family. The child's young age made the child's wishes and concerns unavailable to the court. The trial court also found that H.J.H. had been in the agency's temporary custody for 12 or more of a consecutive 22-month period. The trial court considered the child's need for a legally secure permanent placement and found that no other placement options were available and that the foster parents will adopt if permanent custody is granted. *See* R.C. 2151.414(D)(1)(d).  The trial court determined whether any factors in divisions (E)(7) to (11) applied and found that the mother's prior parental rights to one of H.J.H.'s siblings was involuntarily terminated and the mother failed to provide clear and convincing evidence that, notwithstanding the prior termination, she can provide a legally secure placement and adequate care for the health, welfare and safety of the child. *See* R.C. 2151.414(D)(1)(e).

{¶29}  After weighing the evidence and all reasonable inferences, considering the credibility of the witnesses after according the requisite deference to the trial court's determinations, we conclude that in resolving evidentiary conflicts, the trial court did not clearly lose its way or create a manifest miscarriage of justice so that we must reverse its judgment awarding permanent custody of H.J.H. to the agency. We overrule the mother's second assignment of error and affirm the judgment of the trial court.

V. CONCLUSION

{¶30}  The trial court's determinations that the agency used best efforts to accomplish reunification, that H.J.H. should not be placed with either parent, and that

the permanent commitment is in the best interest of the child are not against the

manifest weight of the evidence.  Having overruled her assignments of error, we affirm

the judgment of the trial court awarding permanent custody of the child to the agency.

JUDGMENT AFFIRMED.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas, Juvenile Division to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court



BY: _____
William H. Harsha, Judge



### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**