[Cite as *In re Da.B.*, 2018-Ohio-689.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 105886

---

IN RE:   Da.B., ET AL.
A Minor Child

[Appeal By Father, D.B.]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 15916030, AD 15916031, and AD 15916032

BEFORE:   Boyle, P.J., Celebrezze, J., and Jones, J.

RELEASED AND JOURNALIZED:   February 22, 2018

**ATTORNEY FOR APPELLANT FATHER**

Michael E. Stinn
21300 Lorain Road
Fairview Park, Ohio   44126


**ATTORNEYS FOR APPELLEES**

**For C.C.D.C.F.S.**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Anthony R. Beery
Assistant County Prosecutor
4261 Fulton Parkway
Cleveland, Ohio   44144

**For L.M., Mother**

Christopher R. Lenahan
2035 Crocker Road, Suite 104
Westlake, Ohio   44145

**Guardian Ad Litem for Children**

Pinkie Lue Clark
P.O. Box 93184
Cleveland, Ohio   44101

**Guardian Ad Litem for Appellant**

Carla L. Golubovic
P.O. Box 29127
Parma, Ohio   44129

**Guardian Ad Litem for Mother**

Suzanne H. Adrain-Piccorelli
255 Falmouth Drive
Rocky River, Ohio   44116

MARY J. BOYLE, P.J.:

{¶1} Appellant, D.B. ("father"), appeals the juvenile court's judgment granting permanent custody of his three minor children — Da.B. (d.o.b. June 15, 2002), Di.B. (d.o.b. October 23, 2006), and I.B. (d.o.b. January 10, 2009) (collectively "the children") — to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "the agency"). He raises two assignments of error for our review:

1. The trial court abused its discretion when it denied Appellant Father D.B.'s motion for an extension of temporary custody.

2. The trial court's order granting Appellee Cuyahoga County Division of Children Services' motion to modify temporary custody to permanent custody is against the manifest weight of the evidence and should be vacated.

{¶2} Finding no merit to his appeal, we affirm.

## I. Procedural History and Factual Background

{¶3} On November 16, 2015, CCDCFS filed a complaint seeking temporary custody of Da.B., Di.B., and I.B. after father was arrested and incarcerated for rape charges on November 14, 2015, requiring law enforcement to remove the children from the home. According to CCDCFS's amended complaint filed on November 20, 2015, father gained custody of the children after their mother ("mother") lost custody in August 2011 due to her substance-abuse and anger-management issues, which she had yet to resolve. The amended complaint also alleged that the children's mother "failed to maintain a relationship with the children and her ability to provide care for them is unknown at this time."

{¶4} On February 11, 2016, a hearing was held before the magistrate, where social workers for CCDCFS, counsel for mother, father, and CCDCFS, and guardians ad litem for mother and the children were present. The magistrate found that the children were neglected

and dependent and committed them to the temporary custody of CCDCFS. On February 29, 2016, the juvenile court judge adopted the magistrate's decision. In its order, the juvenile court noted that father was incarcerated. The court also noted that the permanency plan for the children was reunification.

{¶5} During pretrial proceedings, the court appointed a guardian ad litem and counsel for the children's mother, the children, and father. The juvenile court also held an in camera hearing, during which the children, the children's counsel, and guardians ad litem were present.

{¶6} On August 12, 2016, approximately nine months after it received temporary custody of the children, CCDCFS moved to modify temporary custody to permanent custody on the basis that the children could not be placed with either parent within a reasonable time and that permanent custody was in the children's best interest. In support of its motion, the agency attached the affidavit of Lateisha Ollison, a child-protection specialist with CCDCFS. In her affidavit, Ollison stated that the case plan filed with and approved by the juvenile court required father and mother to provide the children's basic needs as well as stable, appropriate housing for the children. The affidavit stated that mother "has failed to make herself available for case plan services[,]" "has longstanding, unaddressed mental health and substance abuse issues[,]" and lost custody of two other children not subject to the current litigation. The affidavit also stated, "Father is incarcerated pursuant to pending charges for rape, kidnapping, gross sexual imposition, felonious assault, and robbery." CCDCFS produced Ollison's semiannual review ("SAR") report, which is an extensive outline of each child's case plan and services, progress, and barriers to progress; history of visitation by the parents; plans for permanency; and an outline of steps and actions taken in the children's custody cases so far. The report reflected that father was currently being held in a locked facility with no expected release date and was unable to

make any progress on his case plan due to his inpatient status as of August 23, 2016, at Northcoast Behavioral Healthcare.

{¶7} The matter proceeded to an evidentiary hearing held on May 4, 2017. At the hearing, father's attorney informed the court that father did not agree to stipulating to the report filed in his criminal case that found him to be incompetent. Father's attorney explained that father was in the process of firing his previous attorney in his criminal case. The juvenile court noted that the finding of incompetence had yet to be vacated by the trial court.

{¶8} The state called two witnesses, Lateisha Ollison and Arvella Fike, both of whom were child-protection specialists with CCDCFS. Ollison explained that she was the initial child-protection specialist assigned to the case in November 2015, when the initial complaint for temporary custody was filed, and stayed on the case until December 2016. Ollison stated that she had limited interactions with the children's mother, who had a history of unsuitable housing for the children and substance abuse issues. She testified that father was incarcerated during the time that she had the case and that his case plan was to provide for the children's basic needs, which he could not do while incarcerated. Ollison stated that the concerns related to father were that he failed to arrange a caregiver for the children and, besides phone calls with Da.B. and the delivery of Christmas presents to Da.B., had little involvement in the children's lives while he was incarcerated. Ollison testified that Da.B. was currently at InFocus, a group home, and Di.B. and I.B. were in a foster home in Youngstown, Ohio. Ollison explained that because the younger children's foster mom was not comfortable giving father her cell phone number, Ollison gave him her cell phone number so that he could call Ollison when she visited Di.B. and I.B.; however, father never called. She also explained that while father indicated that he was frustrated he could not speak to Di.B. and I.B., he did not want them visiting him at Northcoast

Behavioral Healthcare. Ollison stated that the children indicated that they would like to go home with father.

**{¶9}** The state next called Fike, who explained that the children's case was transferred to her in December 2016. She testified that she was only able to speak to the children's mother once over the phone, during which time the children's mother stated that she did not have stable housing. Fike stated that neither she nor the children had contact with mother since. She then stated that at the time she took over the case, father was at Northcoast Behavioral Healthcare, but knew that at the time of the hearing, he had been moved back to the city jail. During her testimony, the state introduced a journal entry from father's criminal case that stated that he was incompetent to stand trial and was referred to Northcoast Behavioral Healthcare. Fike testified that she had a few contacts with father concerning possible caregivers for the children as well as opportunities to speak and visit with the children. Fike explained, however, that the potential caregivers identified by father informed her that they did not want to care for the children. Fike stated that she was unaware of a possible release date for father from jail and recommended that the children be placed in CCDCFS's permanent custody.

**{¶10}** On cross-examination, Fike stated that she spoke with father two times over the past five months. She testified that she knew father was in constant contact with Da.B. and that Di.B. and I.B.'s foster mom had concerns about giving father her personal contact information. Fike then stated that when she asked Da.B. if he would want to return home with his father if he was released, Da.B. shrugged his shoulders and said he was not sure. Fike stated that Di.B. and I.B. indicated that while they loved their father, they understood that they could not live with him at the time.

**{¶11}** The court then heard from the children's guardian ad litem, Pinkie Clark, who described the children's placements. She indicated that father was still incarcerated and that the children needed permanency. She stated that she believed awarding permanent custody to CCDCFS was in the children's best interest. Clark stated that during their last conversation, the children indicated that they would like to live with father. She also admitted that the children would want to go home if that were an option, but that they understood that he was incarcerated and, therefore, returning home was not an option.

**{¶12}** In its journal entry, the court made the following findings:

[N]otwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the [children] to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside the [children's] home. * * *

The [children] cannot be placed with either of the [children's] parents within a reasonable time or should not be placed with the [children's] parents. * * *

Father has a chronic mental illness that is so severe that it makes the father unable to provide an adequate, permanent home for the [children] at the present time and, as anticipated, within one (1) year after the Court holds the hearing in this matter. Father was found incompetent to stand trial on August 23, 2016, by Dr. Nicole A. Livingston. Further, Dr. Livingston's report was stipulated to by the father with assistance of counsel.

Father has neglected the [children] between the date the original complaint was filed and the date of the filing of this motion by the failure to regularly visit, communicate, or support the [children] due to his incarceration in Case No. 15-601270-A since November 14, 2015.

Father is unable to provide food, clothing, or shelter due to his incarceration in Case No. 15-601270-A since November 14, 2015.

The Court further finds, based upon the evidence and testimony presented and the recommendation of the guardian ad litem for the [children] and after considering all relevant factors, including but not limited to each of the factors listed at R.C.

2151.414(D)(1)-(5), that an order of permanent custody is in the [children's] best interest. * * *

The Court further finds that the Cuyahoga County Division of Children and Family Services has made reasonable efforts to finalize the permanency plan for the child. These efforts are: Mother-alcohol and drug/substance abuse assessment; housing; and basic needs. Mother refuses services and her whereabouts are unknown. Father is incarcerated.

{¶13} Based on those findings, the court denied father's motion to extend the temporary custody and awarded CCDCFS permanent custody of Da.B., Di.B., and I.B.

{¶14} From that decision, father appeals. Mother has not appealed.

## II. Law and Analysis

### A. Father's Motion for Extension of Temporary Custody

{¶15} In his first assignment of error, father argues that the trial court erred when it denied his motion to extend temporary custody for the children because he could be found not guilty for his criminal charges and released from jail. We disagree.

{¶16} R.C. 2151.353(G) states that "the court shall not order an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care." The children were removed by law enforcement on November 14, 2015. The complaint was filed on November 16, 2015. Therefore, based on R.C. 2151.353(G)'s language, the juvenile court was not allowed to extend temporary custody beyond November 14, 2017. Therefore, because the permanent custody hearing was held on May 4, 2017, the juvenile court only had the ability to extend the temporary custody for another six months.

{¶17} Nevertheless, even though the court could have extended the temporary custody, R.C. 2151.415(D)(1) states:

The court may extend the temporary custody order of the child for a period of up to six months, if it determines at the hearing, by clear and convincing evidence, that the extension is in the best interest of the child, there has been significant progress on the case plan of the child, and there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension.

In other words, a juvenile court is not required to extend temporary custody if it finds that a child's best interest would not be served by an extension or the child would not be reunified with the parents within the period of extension.

{¶18} Further, R.C. 2151.415(D) "'provides only that the juvenile court *may* extend the temporary custody order, not that it *must* do so. Therefore, such decision is subject to review under an abuse of discretion standard.'" (Emphasis sic.) *In re T.W.*, 12th Dist. Warren No. CA2017-06-079, 2017-Ohio-8268, ¶ 25, quoting *State v. Perkins*, 12th Dist. Clinton No. CA2005-01-002, 2005-Ohio-6557.

{¶19} The appellant in *In re H./PO. Children*, 5th Dist. Stark Nos. 2015CA00095 and 2015CA00096, 2015-Ohio-3860, made an argument similar to father's. In that case, the appellant, who was incarcerated on an aggravated-murder charge, claimed that the trial court erroneously denied her motion to extend temporary custody because she could be released from jail. The Fifth District disagreed, noting that the appellant had been in jail on the aggravated murder charge for approximately one year and that there was "no reasonable cause to believe that the children could be reunified with [the] appellant within the next six months." *Id.* at ¶ 26. The court concluded that the trial court did not abuse its discretion in denying the appellant's motion for temporary custody. *Id.* at ¶ 26, 27.

{¶20} The same reasoning applies to this case. At the time of the permanent custody hearing, father was charged with a slew of serious charges, including rape, gross sexual

imposition, kidnapping, and robbery. Like *H./PO.*, we find that there is no reasonable cause to believe that father and his children could have been reunited within the period of extension. Further, in one of those cases, Cuyahoga C.P. No. 15-601270-A, father stipulated to a report finding him to be incompetent, which required him to receive inpatient treatment at Northcoast Behavioral Healthcare and suspended his court proceedings until his competency was restored.

{¶21} In light of the above, we find that the juvenile court's order denying father's request for an extension of temporary custody was supported by clear and convincing evidence and was not an abuse of its discretion. Accordingly, we overrule father's first assignment of error.

### B. Trial Court's Grant of Permanent Custody

{¶22} In his second assignment of error, father argues that the trial court's order granting CCDCFS permanent custody of the children was against the manifest weight of the evidence.

{¶23} Parents do not permanently lose their "fundamental liberty interest" in caring for and having custody of their children simply because they temporarily lose custody to the state. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1938, 71 L.Ed.2d 599 (1982). In fact, "the termination of parental rights should be an alternative of 'last resort'" as it has been labeled as "the family law equivalent of the death penalty[.]" *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 12, citing *In re Cunningham*, 59 Ohio St.2d 100, 391 N.E.2d 1034 (1979); *In re Hoffman*, 97 Ohio St.3d 92, 2002-Ohio-5368, 776 N.E.2d 485, ¶ 14.

{¶24} A parent's interest in the custody of their child, however, is not absolute, and the state may permanently terminate parental rights when it would serve a child's best interests. *Id.* "By terminating parental rights, the goal is to create a 'more stable life' for dependent children and to 'facilitate adoption to foster permanency for children.'" *In re L.W.*, 8th Dist. Cuyahoga

No. 104881, 2017-Ohio-657, ¶ 21, quoting *In re N.B.*, 8th Dist. Cuyahoga No. 101390, 2015-Ohio-314.

{¶25} When deciding whether to terminate parental rights and award permanent custody to a public services agency, R.C. 2151.414 requires a court to employ a two-part test. First, the court must find, by clear and convincing evidence, that the child

> (a) cannot be placed with either parent within a reasonable period of time or should not be placed with either parent if any one of the factors in R.C. 2151.414(e) are present;
>
> (b) is abandoned;
>
> (c) is orphaned and no relatives are able to take permanent custody of the child; or
>
> (d) has been in the temporary custody of one or more public or private children services agencies for 12 months or more of a consecutive 22-month period.

*In re J.S.*, 8th Dist. Cuyahoga Nos. 101991 and 101992, 2015-Ohio-2701, ¶ 47, citing R.C. 2151.414(B)(1)(a)-(d). Second, a court must find, again by clear and convincing evidence, that granting permanent custody under R.C. 2151.414(D) is in the child's best interest.

{¶26} "Clear and convincing evidence" is a higher standard of proof than a mere "preponderance of the evidence," but a lower standard than "beyond a reasonable doubt." *Id.* at ¶ 48, citing *In re Awkal*, 95 Ohio App.3d 309, 642 N.E.2d 424 (8th Dist.1994). It is satisfied when the evidence presented "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Id.*, quoting *Awkal*.

**1. Placement of Child**

{¶27} We first look to whether clear and convincing evidence supports the juvenile court's finding that the children could not be placed with their parents within a reasonable time or should not be placed with their parents.

**{¶28}** R.C. 2151.414(E) sets forth 16 factors used to determine whether children cannot or should not be placed with their parents. Some of those factors include whether the parent:

> (1) * * * has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home[;]
>
> (2) [has] [c]hronic mental illness[;] * * *
>
> (4) has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so[;] * * *
>
> (12) is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing[;] [and] * * *
>
> (16) [a]ny other factor the court considers relevant.

R.C. 2151.414(E). If a trial court finds by clear and convincing evidence that any one of the 16 factors exists, it must find that the children cannot or should not be placed with a parent within a reasonable period of time and award permanent custody to an authorized agency. *In re D.J.*, 8th Dist. Cuyahoga No. 88646, 2007-Ohio-1974, ¶ 64.

**{¶29}** In its journal entry awarding permanent custody to CCDCFS, the juvenile court found that:

> [T]he parents have failed continuously and repeatedly to substantially remedy the conditions causing the [children] to be placed outside the [children's] home. * * *
>
> Father has neglected the [children] between the date the original complaint was filed and the date of the filing of this motion by the failure to regularly visit, communicate, or support the [children] due to his incarceration in Case No. 15-601270-A since November 14, 2015.
>
> Father is unable to provide food, clothing, or shelter due to his incarceration in Case No. 15-601270-A since November 14, 2015.

It additionally found that father had a chronic mental illness prohibiting him from providing a stable home for the children.

{¶30} During trial, Ollison from CCDCFS testified that father had "constant contact" with Da.B. while incarcerated because father arranged for Da.B. to have a cell phone that father could call from the jail. She testified that father was also able to send Da.B. Christmas presents. She also testified that the foster mother of the two younger children was not comfortable providing her contact information to father for the purposes of his contacting Di.B. and I.B. Therefore, Ollison gave her personal cell phone number to father so that he could call when she visited the two younger children; however, father never called. Further, she testified that while father attempted to send Di.B. and I.B. Christmas presents, they did not receive them.

{¶31} Additionally, Fike, the succeeding child-protection specialist from CCDCFS, confirmed that father had constant contact with Da.B., but testified that while the children love father, they "understand they can't live with him at [the] time." Both witnesses also testified that father is unable to provide the children's basic needs, as required by his case plan, while incarcerated. Father does not dispute this point, stating in his brief that "*if released from jail*, he would be able to provide for his children's basic needs[.]"

{¶32} While the evidence does show that father regularly communicated with Da.B., it also shows that father failed to visit and communicate with Di.B. and I.B. The evidence also established that father was unable to provide food, clothing, and shelter for the children because he was incarcerated or committed. Father's incarceration does not qualify as an excuse for those failures. *See In re A.D.M.*, 4th Dist. Highland No. 16CA25, 2017-Ohio-1432, 29 (rejecting the appellant's "assertion that her incarceration justified her failure to communicate with A.D.M."). Further, sending Christmas presents to Da.B. cannot constitute the regular support that R.C. 2151.414(E) contemplates.

**{¶33}** Father also contests the sufficiency of evidence supporting the trial court's finding that he had a chronic mental illness. Specifically, he argues that the trial court based its ruling on erroneously admitted Dr. Livingston's report. We see no reason to address this argument because the trial court was required to only find that one of the factors listed in R.C. 2151.414(E) existed, and the evidence discussed above provided sufficient proof for the trial court's findings that factors (1), (4), and (12) listed under R.C. 2151.414(E) existed.

**{¶34}** In light of the above discussion, we cannot say that the trial court's findings were not supported by clear and convincing evidence. Therefore, we find that the first part of R.C. 2151.414's test was satisfied.

## 2. Best-Interest Determination

**{¶35}** To determine whether a grant of permanent custody is in a child's best interest, the juvenile court must consider:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public service children agencies or private child placing agencies for [12] or more months of a consecutive [22]-month period * * *;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in [R.C. 2151.414](E)(7) to (11) * * * apply in relation to the parents and child.

R.C. 2151.414(D)(1). The juvenile court only needs to find one of the above factors in favor of permanent custody to terminate parental rights. *In re J.S.*, 8th Dist. Cuyahoga Nos. 101991 and 101992, 2015-Ohio-2701, ¶ 51, citing *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827.

**{¶36}** In the instant case, the juvenile court found

based upon the evidence and testimony presented and the recommendation of the guardian ad litem for the [children] and after considering all relevant factors, including * * * each of the factors listed at R.C. 2151.414(D)(1)-(5), that an order of permanent custody is in the [children's] best interest.

The testimony presented at the hearing established that the children were removed from father's custody after he was arrested and incarcerated for rape, kidnapping, robbery, and other charges. Moreover, the testimony indicated that mother had not succeeded in her case plan and had almost entirely abandoned the children and that none of the children's relatives were interested in caring for them. All of these factors indicate that the children could not be securely placed with anyone but CCDCFS.

**{¶37}** Father argues that "CCDCFS made no effort to keep in contact with [him]." R.C. 2151.419 requires a public children services agency to make reasonable efforts "to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home." "If the agency has not established that reasonable efforts have been made before the hearing on a motion for permanent custody, then it must demonstrate such efforts at that hearing." *In re E.O.*, 10th Dist. Franklin Nos. 09AP-653 and 09AP-713, 2010-Ohio-344, ¶ 27, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816.

**{¶38}** In *In re C.B.C.*, the Fourth District addressed "whether the concept of 'reasonable efforts' includes attempting reunification with a parent who is serving a five-year prison term and

whose stated term will not expire for at least two years past the date of the permanent custody hearing." *Id.* at ¶ 83. At the permanent custody hearing, the caseworker explained that "it did not offer service to the father while he was imprisoned due to the lack of certified services available in prison." *Id.* at ¶ 85. The court concluded that "this is not a situation [where] the agency totally ignored a natural parent, but instead, a situation where an agency investigated the possibility of placing the child with a natural parent but determined that placement within a reasonable time would be impossible due to the parent's incarceration." *Id.* The court found that

> attempting reunification with such an incarcerated parent would be an unreasonable effort because of the obvious fact that the incarcerated parent lives in a prison; there is no possibility of reunifying the parent and child while the parent is imprisoned. The statute requires reasonable efforts, not unreasonable ones.

*Id.* It went on to state that "[b]eyond maintaining the child in its temporary custody pending the father's release from prison, we are not certain what other efforts LCCS could have undertaken to remove the obstacle preventing reunification between the father and the child." *Id.* at ¶ 83. It stated that the "permanent custody statutes do not appear to contemplate holding a child in custodial limbo while a parent completes a lengthy prison term." *Id.* As a result, the court found that the agency exercised reasonable efforts to reunify the family. *Id.* at ¶ 86.

{¶39} In the instant case, there is no dispute that father has been incarcerated or committed to Northcoast Behavioral Healthcare for over a year. Because of this, CCDCFS had little to no options in its attempts to reunify the family. Ollison testified that while she gave father her cell phone number so that he could call Di.B. and I.B., he did not do so. As the court held in *C.B.C.*, we find that CCDCFS was not required to make efforts that were unreasonable in light of the fact that father was incarcerated or committed to Northcoast Behavioral Healthcare.

**{¶40}** With all of this in mind, we find that the juvenile court's denial of father's motion to extend temporary custody was not an abuse of the juvenile court's discretion. Further, we find that termination of father's parental rights was proper because clear and convincing evidence showed that the children could not be reunited with father and that granting permanent custody to CCDCFS was in the children's best interests. Accordingly, we overrule father's second assignment of error.

**{¶41}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

MARY J. BOYLE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
LARRY A. JONES, SR., J., CONCUR