[Cite as *In re R.H.*, 2019-Ohio-4465.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE R.H., ET AL.                     :
                                       :          No. 108358
                                       :
Minor Children                         :
                                       :
[Appeal by Jo.S., Mother]              :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 31, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD16906632, AD16906634, AD16906635, and AD17909665

---

*Appearances:*

Judith M. Kowalski, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Colleen R. Cassidy Ulrich, Assistant Prosecuting Attorney, *for appellee* C.C.D.C.F.S.

RAYMOND C. HEADEN, J.:

{¶ 1} Appellant Jo.S. ("Mother"), appeals from a juvenile court judgment granting permanent custody of her children, D.P.,[1] J.S.,[2] Q.H.,[3] P.H., C.H., and R.H., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency.") For the reasons that follow, we affirm the juvenile court's judgment.

**Procedural and Substantive History**

{¶ 2} On April 25, 2016, CCDCFS filed a complaint for neglect, dependency, and temporary custody of D.P. (d.o.b. Jan. 13, 2003), J.S. (d.o.b. Dec. 6, 2007), Q.H. (d.o.b. May 7, 2010), P.H. (d.o.b. Mar. 28, 2013), and C.H. (d.o.b. Aug. 27, 2015). The agency also filed a motion for emergency predispositional custody.

{¶ 3} The agency's complaint alleged that Mother had failed to adequately supervise the children, was unable to ensure that the children's educational needs were met, and has a mental health diagnosis for depression and post-traumatic stress disorder that interferes with her ability to care for and provide basic needs to the children. The complaint alleged that Q.H.'s father was unwilling or unable to meet Q.H.'s basic needs. The complaint alleged that P.H. and C.H.'s father, C.A.H., was incarcerated as a result of a conviction for felony domestic violence in which Mother was the victim. Finally, the complaint alleged that J.S.'s alleged father had

---

[1] D.P. is in the legal custody of her maternal grandmother and is not a subject of this appeal.

[2] J.S. filed a separate appeal in 8th Dist. Cuyahoga No. 108406, a companion case to this case.

[3] Q.H. is in the legal custody of her paternal grandmother and is not a subject of this appeal.

failed to establish paternity and was incarcerated. The court granted the agency's motion for predispositional temporary custody.

{¶ 4} The children's guardian ad litem ("GAL") filed a report on July 13, 2016. The report stated that Mother's participation in case-plan services was beneficial but sporadic. In September 2016, the children were adjudicated dependent and committed to the agency's temporary custody. On December 27, 2016, the agency filed a motion for an extension of temporary custody noting that although progress had been made on the case plan — including Mother's completion of domestic violence classes, Mother's maintenance of stable housing, and her engagement in mental health services — the case-plan objectives were not yet complete and the risk to the children had not been sufficiently reduced.

{¶ 5} On April 6, 2017, Mother filed a motion for legal custody of the children. Following a hearing on July 18, 2017, the court granted the agency's motion for an extension of temporary custody and denied Mother's motion for legal custody. The magistrate found that there had not been significant progress on the case plan, and progress had not been made in alleviating the cause for the children's removal from the home.

{¶ 6} Mother gave birth to R.H. on May 16, 2017. The agency filed an additional complaint on June 22, 2017, alleging R.H. to be a dependent child and requesting temporary custody. R.H. was committed to the agency's predispositional temporary custody on June 30, 2017.

{¶ 7} On August 29, 2017, the agency filed a second motion for extension of temporary custody. Following a hearing on October 13, 2017, the court granted this motion. The court also placed R.H. in temporary custody.

{¶ 8} On October 13, 2017, a Semi-Annual Review was filed. The review noted that Mother continued to make significant progress on her case-plan objectives. The report also noted that due to marijuana and alcohol use and a recent domestic violence incident, her visitation with the children had been moved from the home to another location.

{¶ 9} On March 1, 2018, the agency filed a motion to modify temporary custody to permanent custody. In an attached affidavit, the social worker assigned to the case stated that Mother was inconsistent in participating in mental health services, tested positive for marijuana on November 28, 2017, and had refused to participate in screens since then, Father was not participating in case plan, and Mother lacked appropriate judgment and parenting skills to be able to provide a stable home for the children.

{¶ 10} On July 11, 2018, the children's maternal grandmother ("maternal grandmother") filed a motion for permanent custody. On September 5, 2018, Mother obtained an ex parte domestic violence civil protection order against C.A.H. Mother's petition was subsequently dismissed for want of prosecution, and the ex parte protection order was dissolved. On October 9, 2018, the GAL submitted a report recommending that the agency be awarded permanent custody of the children.

{¶ 11} The case was set for a trial hearing on the agency's motion for permanent custody on November 16, 2018. At that time, the agency informed the court that J.S. had expressed a desire to be returned to her mother's custody. The case was continued in order for J.S. to be appointed counsel.

{¶ 12} On January 10, 2019, Mother filed a motion for legal custody to her, or in the alternative, to maternal grandmother. On January 14, 2019, the court conducted an in camera interview of J.S. in which she expressed her desire to be reunited with her mother, or in the alternative, to be placed with her maternal grandmother. The court then proceeded with a trial hearing.

{¶ 13} The agency called social worker Tricia Frank ("Frank"), who testified that she had not had contact with C.A.H., he was not engaging in any services recommended in the case plan, and he had not had any contact with his children; that Mother had initially engaged with substance abuse services, but after testing positive for marijuana, it was recommended that she complete a higher level of service and she refused, although she subsequently completed outpatient treatment. At the time of the hearing, R.H. was placed with the maternal grandmother, P.H. and C.H. were in a foster placement, and J.S. was placed with a paternal relative.

{¶ 14} Mother called two witnesses. First, Ashley Hovancsek ("Hovancsek") testified as to her relationship with Mother as a counselor and program manager for Frontline Services. Hovancsek testified that Mother had generally been consistently engaged in services and seemed to have benefited from these services. Next, maternal grandmother testified.

{¶ 15} Finally, the GAL recommended that the agency be awarded permanent custody of the children. The GAL stated that despite Mother's significant bond with the children, she had not consistently remained sober or engaged in all of her case-plan services. The GAL also expressed concern as to maternal grandmother's home and her ability to supervise the children, in light of the fact that she has a three-story, six-bedroom home and was responsible for the care of numerous children and grandchildren.

{¶ 16} At the conclusion of the hearing, the court ordered the parties to submit proposed findings of fact and conclusions of law. On January 22, 2019, the agency and Mother each filed proposed findings of fact and conclusions of law.

{¶ 17} On March 1, 2019, the court granted permanent custody to the agency and denied all other motions. Mother appealed, presenting three assignments of error for our review.

**Law and Analysis**

{¶ 18} In Mother's first assignment of error, she argues that the trial court erred in finding that permanent custody was in the best interests of the children. In her second assignment of error, she argues that the trial court erred and prejudiced her by failing to grant custody of the children to maternal grandmother. In her third and final assignment of error, she argues that the court erred and abused its discretion in finding that clear and convincing evidence supported granting permanent custody to the agency. For ease of discussion, we will address these assignments of error together.

**{¶ 19}** When adjudicating a motion for permanent custody, juvenile courts apply a two-prong test pursuant to R.C. 2151.414(B)(1). First, the court must find one of the following: (a) the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned, and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22-month period. R.C. 2151.414. Second, the court must determine that it is in the best interest of the child to grant permanent custody to the agency. These findings must be supported by clear and convincing evidence. The Ohio Supreme Court defines clear and convincing evidence as

> "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required "beyond a reasonable doubt in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 42, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

**{¶ 20}** It is well-recognized that a parent has a "fundamental liberty interest" in the care, custody, and management of his child and an "essential and basic civil right" to raise his or her children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1938, 71 L.Ed.2d 599 (1982); *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990). A parent's liberty interest, however, is tempered by the ultimate

welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979).

{¶ 21} Here, the court satisfied the first prong of the statutory test by finding that R.H., J.S., C.H., and P.H. had been in the agency's temporary custody for 12 or more months of a consecutive 22-month period.

{¶ 22} In addition to this statutory determination, the trial court made a best interest determination pursuant to R.C. 2151.414(D). A thorough review of the record in this case shows that competent, credible evidence supports the trial court's determination that permanent custody is in the children's best interest.

{¶ 23} To determine whether a grant of permanent custody is in a child's best interest, the juvenile court must consider:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public service children agencies or private child placing agencies for [12] or more months of a consecutive [22]-month period;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in [R.C. 2151.414](E)(7) to (11) apply in relation to the parents and child.

R.C. 2151.414(D)(1). "The juvenile court only needs to find one of the above factors in favor of permanent custody to terminate parental rights." *In re Da.B.*, 8th Dist. Cuyahoga No. 105886, 2018-Ohio-689, ¶ 35, citing *In re J.S.*, 8th Dist. Cuyahoga Nos. 101991 and 101992, 2015-Ohio-2701, ¶ 51, citing *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827.

{¶ 24} In this case, the court considered the statutory factors. With respect to R.C. 2151.414(D)(1)(a), the trial court considered the interaction and interrelationship of each of the children with their respective parents, relatives, and foster caregivers. Specifically, the court considered the children's relationship with Mother and maternal grandmother. The court also noted that both P.H. and C.H. were well-bonded with their foster mother, and that the relative who had placement of J.S. at the time of the hearing was willing to accept placement of R.H. so that the siblings could remain together. The court also considered that C.H. is currently placed in a foster home where the foster parent is equipped to meet her extensive special needs, and her medical and educational needs are being met.

{¶ 25} With respect to R.C. 2151.414(D)(1)(b), the trial court considered the wishes of J.S. as expressed in her in camera interview. Further, J.S. was appointed counsel because her wishes — to be reunited with Mother or maternal grandmother — conflicted with the GAL's recommendation, thus ensuring that J.S.'s wishes were adequately represented to the court. C.H., P.H., and R.H. are too young to articulate their wishes, and the GAL recommended that permanent custody was in their best interest.

{¶ 26} With respect to R.C. 2151.414(D)(1)(c), the trial court considered that J.S. was currently placed with a paternal relative. Although J.S. had previously been in a foster placement with her siblings, she was transferred to a new placement as a result of allegations of sexually inappropriate behavior. The court also considered that P.H. and C.H. have been placed in the same foster home for over two years and are both well-bonded to the foster mother, who is willing to adopt the children. Finally, the court considered that R.H. was placed with maternal grandmother. Shortly before the hearing, the agency filed a case-plan amendment to transfer R.H. due to concerns about other individuals living in the home and the overall appropriateness of the placement.

{¶ 27} Finally, with respect to R.C. 2151.414(D)(1)(d), the court considered the children's need for a legally secure placement and whether such placement could be achieved without a grant of permanent custody. The record shows that Mother is not in a position to retain custody of her children. Although she has undoubtedly made significant progress on her case plan, several factors, including her ongoing involvement in a domestically violent relationship, support a grant of permanent custody to the agency.

{¶ 28} Mother argues in her second assignment of error that the trial court erred and prejudiced her by failing to award custody to maternal grandmother. The Ohio Supreme Court has made clear that the juvenile court's statutory duty does not include determining by clear and convincing evidence that termination of parental rights is the only option, nor does it include that finding by clear and convincing

evidence that no suitable relative was available for placement. *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 64. Although generally the court should consider the least restrictive and most family-like placement, this consideration does not negate the other factors. Further, even if the court was required to determine that no suitable relative was available for placement, a review of the record shows that there was clear and convincing evidence to support such a determination. The court made the following findings regarding maternal grandmother:

> Maternal grandmother does not have a plan to be able to properly supervise all of the children should she be granted custody. Specifically, J.S. and P.H., who need to be supervised at all times.
>
> Grandmother, should she be granted custody, would be responsible for nine minor children in total, including her own.
>
> Grandmother does not know all of the special needs of the children and all of the services in place to address them.
>
> Grandmother was not able to ensure that the special needs of the children's sibling were met when placed in her home.

In light of these findings, the court properly considered whether a legally secure placement could be achieved without a grant of permanent custody.

{¶ 29} For these reasons, we find that the juvenile court's award of permanent custody to the agency was sufficiently supported by competent, credible evidence. Further, the court did not err in declining to award custody to maternal grandmother.

{¶ 30} Judgment affirmed.

It is ordered that appellee recover of appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
RAYMOND C. HEADEN, JUDGE

SEAN C. GALLAGHER, P.J., and
MICHELLE J. SHEEHAN, J., CONCUR