[Cite as *In re E.M.*, 2022-Ohio-3867.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| IN THE MATTER OF: | **CASE NO. 2022-T-0057** |
|---|---|
| E.M., DEPENDENT CHILD | Civil Appeal from the Court of Common Pleas, Juvenile Division |
| | Trial Court No. 2021 CH 00014 |

**O P I N I O N**

Decided: October 31, 2022
Judgment: Affirmed

*Tammy S. Richardson*, Children Services Board of Trumbull County, 2282 Reeves Road N.E., Warren, OH 44483 (For Appellee, Trumbull County Children Services Board).

*Judith M. Kowalski,* 333 Babbitt Road, Suite 323, Euclid, OH 44123 (For Appellant, Caprice Schlageter).

*Donna J. McCollum*, 26 Market Street, Suite 610, Youngstown, OH 44503 (Guardian Ad Litem).

JOHN J. EKLUND, J.

{¶1} Appellant, mother, appeals the June 21, 2022 judgment entry terminating her parental rights and granting permanent custody of her daughter, E.M. (D.O.B. 02/20/2021), to Appellee, the Trumbull County Children Services Board ("TCCSB"). The father's parental rights were likewise terminated, however, he is not a party to this appeal. For the following reasons, we affirm the judgment of the Trumbull County Court of Common Pleas, Juvenile Division.

{¶2} In 2021, approximately two weeks before E.M. was born, a permanent custody trial was held in Ashtabula County concerning E.M.'s two older siblings. After E.M. was born, the Ashtabula County Children Services Board ("ACCSB") filed a complaint and an Ex Parte Temporary Custody motion for E.M. However, at that time, Appellant had completed her case plan for her other children and the court denied ACCSB's motion. Appellant, father, and E.M. subsequently moved to Trumbull County.

{¶3} On May 17, 2021, TCCSB filed a complaint for dependency of E.M. On May 27, 2021, a hearing was held and E.M. was placed in temporary custody of TCCSB. The lower court held that E.M. was dependent and that temporary custody was necessary because Appellant and father had two other children in foster care, there was a concern regarding domestic violence, and neither could provide stable housing.

{¶4} In March 2022, TCCSB filed a motion for permanent custody of E.M. and to terminate parental rights because Appellant and father each had made little progress on their case plans. At the hearing, Appellant's attorney orally moved to extend temporary custody of E.M., asserting that Appellant was making progress on her case plan. The magistrate stated that the court would take that motion under advisement and the hearing continued.

{¶5} The caseworker for TCCSB, Lauren Weimer, and the guardian ad litem, Donna McCollum, testified at the hearing. Both recommended terminating parental rights. Specifically, Ms. Weimer testified that both parents were slowly making little progress on their case plans, tested positive for marijuana use during most drug and alcohol screenings, failed to demonstrate that either had stable housing or income, and had only

2

attended the one hour, once a week visitation with E.M. on 50% of the scheduled visitation dates.

{¶6} The magistrate recommended granting TCCSB's motion to terminate parental rights and place E.M. in permanent custody with TCCSB. In June 2022, the court filed a judgment entry adopting the magistrate's decision.

{¶7} Appellant timely appealed and raises two assignments of error. For clarity, we address Appellant's assignments out of order.

{¶8} Appellant's second assignment of error: "THE TRUMBULL COUNTY FAMILY COURT ERRED TO THE PREJUDICE OF THE APPELLANT IN NOT EXTENDING THE TEMPORARY CUSTODY ORDER, AS THE MOTHER HAD MADE SIGNIFICANT CASE PLAN PROGRESS, AND IT WAS REASONABLE TO BELIEVE THAT THE CHILD COULD BE REUNIFIED WITH HER WITHIN THE PERIOD OF EXTENSION."

{¶9} In this assignment of error, Appellant contends that the juvenile court erred by not extending temporary custody when it granted TCCSB permanent custody and terminated parental rights.

{¶10} In her brief, Appellant notes "that the Court, while stating that the Mother's motion for extension would be taken under advisement (T.T.,pp. 4, 47), it was not specifically ruled on either verbally or in the entries." However, the court effectively denied Appellant's motion to extend temporary custody when it granted permanent custody to TCCSB and terminated parental rights. Nevertheless, we address Appellant's arguments under this assignment.

3

Case No. 2022-T-0057

{¶11} Under R.C. 2151.415(D)(1), the court may extend a temporary custody order for up to six months, if it finds, by clear and convincing evidence, 1) that the extension is in the best interest of the child, 2) that there has been significant progress on the case plan, and 3) there is reasonable cause to believe that the child will be reunified with one of the parents or otherwise permanently placed within the period of extension. We review a juvenile court's decision on a motion to extend a temporary custody order for abuse of discretion. *In re Da.B.*, 8th Dist. Cuyahoga No. 105886, 2018-Ohio-689, ¶ 18.

{¶12} Here, Appellant asserts that the court erred by not extending temporary custody because "[m]other had made enough progress on her case plan services that reunification was very likely." Specifically, she contends that if the six-month extension had been granted, it would give her the time needed to demonstrate that she has stable housing and income, and to provide TCCSB with her mental evaluations.

{¶13} Appellant is correct that she had made progress, though minimal, on her case plan. The juvenile court addressed her progress, but was not persuaded "clearly and convincingly" that reunification within six months was likely. This is because the case plan started in May 2021, and Appellant had only begun making progress in January 2022. Further, Ms. Weimer's testimony showed that Appellant had only worked one month (in March 2022) since E.M. was placed in foster care, had attended only 50% of visitations with E.M., consistently tested positive for marijuana use during drug screenings, is "totally dependent" on third parties for housing and support, and had not demonstrated a stable residence because her boyfriend, with whom she resides, failed to report to TCCSB for a background check. Thus, Appellant's minimal progress on her

4

case plan, which she started eight months after it was created, does not clearly and convincingly demonstrate that she was likely to be reunified with E.M. if an extension had been granted. The court did not abuse its discretion by not extending temporary custody.

{¶14} Appellant's second assignment of error is without merit.

{¶15} Appellant's first assignment of error: "FIRST ASSIGNMENT OF ERROR: THE TRUMBULL COUNTY FAMILY COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT CLEAR AND CONVINCING EVIDENCE SUPPORTED GRANTING PERMANENT CUSTODY OF THE SUBJECT CHILD TO THE TRUMBULL COUNTY CHILDREN'S SERVICES BOARD."

{¶16} In her first assignment of error, Appellant asserts that the juvenile court abused its discretion when it granted TCCSB permanent custody and terminated parental rights.

{¶17} "[T]he termination of parental rights should be an alternative of 'last resort'" as it has been labeled as "the family law equivalent of the death penalty[.]" *In re D.A.*, 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829, ¶ 12, citing *In re Cunningham*, 59 Ohio St.2d 100, 391 N.E.2d 1034 (1979); *In re Hoffman*, 97 Ohio St.3d 92, 2002–Ohio–5368, 776 N.E.2d 485, ¶ 14. A parent's interest in the custody of their child, however, is not absolute, and the state may permanently terminate parental rights when it would serve a child's best interests. *Id.*

{¶18} "'An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and convincing evidence.'" *In re. T.B.*, 11th Dist. Lake No. 2008-L-055, 2008-Ohio-4415, ¶ 36, quoting *In re Lambert*, 11th Dist. Geauga No. 2007-G-2751, 2007-Ohio-2857, ¶ 75.

5

The clear and convincing evidence standard requires that the evidence "'produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.'" *In re J.S.E.*, 11th Dist. Portage Nos. 2009-P-0091 & 2009-P-0094, 2010-Ohio-2412, ¶ 25. "Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof." *In re Holcomb*, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

{¶19} When deciding whether to terminate parental rights and award permanent custody to a public services agency, R.C. 2151.414 requires a court to employ a two-part test. First, pursuant to R.C. 2151.414(B)(1), the court must find, by clear and convincing evidence, that any of the following applies to the child:

    (a) cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents;

    (b) is abandoned;

    (c) is orphaned and no relatives are able to take permanent custody of the child;

    (d) has been in the temporary custody of one or more public or private children services agencies for 12 months or more of a consecutive 22–month period; or

    (e) the child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶20} And second, the juvenile court must find by clear and convincing evidence that granting permanent custody of the child to the agency is in the best interest of the child upon considering all relevant factors, including those in R.C. 2151.414(D). R.C. 2151.414(B)(1).

6

**{¶21}** The court made its first finding under R.C. 2151.414(B)(1)(a). Appellant argues that there was not clear and convincing evidence that E.M. could not be placed with either parent within a reasonable time or should not be placed with either parent. The evidence demonstrates that both parents had made little to no progress on several requirements of their case plans, including housing, mental health, financial stability, visitation, and drug and alcohol issues.

**{¶22}** We first consider housing. As stated above, Appellant has had six residences since E.M. was placed in foster care, is currently staying with her boyfriend (who has not submitted to criminal background checks or fingerprinting), and had not cooperated with the guardian ad litem or Ms. Weimer to access the residence. Regarding father's housing, Ms. Weimer testified that his residence was unsanitary and unsafe, and had utility shutoff notices and eviction notices on the door.

**{¶23}** We next consider mental health. Appellant began mental health treatment in January 2022 and signed releases for mental health information in March 2022. TCCSB had not received Appellant's mental health information and that information is not part of the record. Father has not had his "psychological" and had not attended required batterer's intervention classes.

**{¶24}** Third, we consider financial stability. Appellant worked her first and only job for one month in March 2022 and depends on third parties for housing and support. Father is self-employed, but has not provided TCCSB with bank records of verified income.

**{¶25}** Next, both parents attended only half of the offered visitation dates.

7

{¶26} Lastly, we consider drug and alcohol issues. Appellant started assessment in March 2022 and father started assessment in February 2022.

{¶27} Overall, the judgment was supported by clear and convincing evidence sufficient to satisfy R.C. 2151.414(B)(1)(a).

{¶28} Appellant next argues that the best interest factors weigh against terminating parental rights. The juvenile court individually addressed each factor, made findings under each, and concluded under the clear and convincing standard that permanent custody was in E.M.'s best interest.

{¶29} The first factor under R.C. 2151.414(D)(1)(a) is the "interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child." Ms. Weimer testified that both father and Appellant had attended only half of their scheduled visits with E.M. She also testified that E.M.'s foster parents "make an effort" to promote a relationship between E.M. and her brothers. Further, Ms. Weimer testified that E.M. reacts to father and Appellant the same way she reacts to all the caseworkers, but that E.M. is very "bonded" with her foster parents.

{¶30} The second factor under R.C. 2151.414(D)(1)(b) is the "wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child." E.M. is too young to verbally express her wishes, but Ms. Weimer testified that E.M. prefers her foster parents. Moreso, the guardian ad litem recommended terminating parental rights.

{¶31} The third factor under R.C. 2151.414(D)(1)(c) is the custodial history of the child. E.M. was placed in foster care by emergency order when she was three months

8

old, and remained in foster care for ten months (at the time the judgment was rendered.) Specifically, E.M. had been in foster care for 77% of her life.

{¶32} The fourth factor under R.C. 2151.414(D)(1)(d) is the "child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency." Ms. Weimer testified that E.M. is bonded with her foster parents. Father and Appellant had only recently begun progress on their case plans and placement with either was unlikely. Additionally, TCCSB was unable to place E.M. with another family member.

{¶33} The last factor considered under R.C. 2151.414(E)(11) is whether "the parent has had parental rights involuntarily terminated with respect to a sibling of the child * * * and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child." Father and Appellant had their parental rights terminated with respect to E.M.'s two brothers. Moreover, we discern no substantial evidence that, notwithstanding the prior termination, either father or Appellant could provide a legally secure permanent placement and adequate care for the health, welfare, and safety of E.M. Appellant has had six residences since E.M. was placed in foster care, is "totally dependent" on third parties for shelter and care, and had "not cooperated with a home study" for E.M.'s placement. Father has failed to provide TCCSB with proof of legal income or a legal right to stay in what he alleges is his residence. Ms. Weimer testified that she visited father's residence once and found it unsanitary because she saw a dog cage and dog feces in the room reserved for E.M.

9

**{¶34}** The juvenile court did not abuse its discretion in finding by clear and convincing evidence that granting permanent custody to TCCSB was in her best interest upon considering all relevant factors.

**{¶35}** Appellant's first assignment of error is without merit.

**{¶36}** The judgment of the Trumbull County Court of Common Pleas, Juvenile Division, is affirmed.

THOMAS R. WRIGHT, P.J.,

MARY JANE TRAPP, J.,

concur.

Case No. 2022-T-0057